N THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-00509-PAB-KMT

TAMMY KIBLER, on behalf of herself and all others similarly situated,

    Plaintiff,

v.

THE KROGER COMPANIES, an Ohio corporation, and
DILLON COMPANIES, LLC d/b/a KING SOOPERS/CITY MARKET, a Kansas limited
liability company,

    Defendants.

---

**ORDER**

---

This matter is before the Court on Plaintiff's Motion for Conditional Collective

Certification of Fair Labor Standards Act Claim [Docket No. 19].  Defendants

responded, Docket No. 24, and plaintiff replied.  Docket No. 27.  Defendants also filed a

Motion to Strike or, in the Alternative, for Leave to File a Surreply [Docket No. 29].

Plaintiff responded, Docket No. 30, and defendants replied.  Docket No. 31.

**I.  BACKGROUND[1]**

This dispute is brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C.

§§ 201, *et seq.*  Docket No. 1 at 2, ¶ 2.  Defendant The Kroger Companies ("Kroger") is

the nation's largest supermarket chain.  *Id.* at 3, ¶ 9.  Kroger operates 100 King

Soopers and City Market stores in Colorado under the name Dillon Companies, LLC

---

[1] These facts are taken from plaintiff's Complaint and Jury Demand [Docket No.
1] and are assumed to be true in resolving plaintiff's motion.

("Dillon"), which is a wholly owned subsidiary of Kroger.  *Id.*, ¶¶ 10–11.  At the time the complaint was filed, plaintiff was employed by Kroger as a supervisor at one of its King Soopers stores in Colorado.  *Id.*, ¶ 12.  Plaintiff worked at a King Soopers in Castle Pines, Colorado, from May 2020 until September 2020, and then transferred to a King Soopers in Castle Rock, Colorado.  *Id.* at 7–8, ¶ 32.

Each Kroger location is staffed by associates, who stock merchandise and assist customers.  *Id.* at 6, ¶ 26.  Associates are organized by job duties and area of responsibility within a particular store location.  *Id.*  Kroger also operates a grocery pick-up program through which customers order groceries online and pick them up at a store location.  *Id.* at 6–7, ¶ 27.  Each location that offers grocery pick-up has a supervisor.  *Id.* at 7, ¶ 28.  Plaintiff was a pick-up supervisor.  *Id.*, ¶ 31.

Certain supervisors are compensated on an hourly basis, paid bi-weekly, and entitled to overtime if they work more than 40 hours in a workweek.  *Id.*, ¶ 30.  Other supervisors, including plaintiff, are compensated on a salaried basis, paid monthly, and do not receive overtime compensation when they work over 40 hours in a workweek.  *Id.*  Whether compensated hourly or by salary, all supervisors have the same essential job duties.  *Id.*, ¶ 31.  Supervisors do not have the authority to hire or fire employees; they do not exercise discretion or independent judgment as to matters of significance; and they are not involved in management of Kroger.  *Id.* at 8, ¶ 33.

Plaintiff alleges that defendants have improperly classified her and certain other supervisors as exempt from the FLSA, even though supervisors "virtually always" work more than 40 hours in a workweek and routinely work more than 55 hours in a work

week.  *Id.*, ¶ 36.  Plaintiff states that these individuals were subject to the same company-wide policy and procedure by which Kroger failed to pay them the wages that they earned.  *Id.* at 4, ¶ 15.  For example, plaintiff worked more than 55 hours in the workweeks beginning June 7, 2020, June 14, 2020, and June 21, 2020, yet defendants did not pay her overtime, in violation of the FLSA.  *Id.* at 8, ¶ 36.  In addition to the hours that plaintiff worked in the store, plaintiff was required to answer calls from associates "late into the evening and early in the morning," yet Kroger did not track this time or compensate plaintiff for it.  *Id.*, ¶ 37.  Plaintiff states that defendants, therefore, have failed to pay supervisors, including plaintiff, for all of their hours worked and also failed to properly calculate supervisors' rates of pay.  *Id.* at 8–9, ¶ 39.  Plaintiff also alleges that defendants have an inadequate timekeeping system to track and record the time that supervisors spend working, and do not instruct supervisors to maintain or submit timecards.  *Id.* at 9, ¶ 39.

Plaintiff seeks to prosecute this action as an "opt-in" collective action on behalf of all people who are or were employed by Kroger as supervisors in the United States at any time in the last three years, plus any period of equitable tolling, and who were not paid overtime for all hours worked in excess of 40 hours in a workweek.  *Id.* at 3, ¶ 13.

## II.  ANALYSIS

### A.  Conditional Certification

Plaintiff asks the Court to conditionally certify this case as a collective action pursuant to § 216(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, which provides in pertinent part:

> Any employer who violates the provisions of . . . section 207 of this title shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages . . . . An action to recover the liability prescribed in [section 207] may be maintained against any employer . . . in any Federal . . . court of competent jurisdiction by any one or more employees *for and in behalf of himself or themselves and other employees similarly situated*.

29 U.S.C. § 216(b) (emphasis added).  There is a two-step approach for determining whether plaintiffs are "similarly situated" for purposes of FLSA collective action certification.  *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001).[2]  A court's initial certification comes at the notice stage, where courts determine whether plaintiffs are similarly situated for purposes of sending notice to putative class members.  *Id.* at 1102.  Plaintiff is required to provide "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan."  *Id.*; *see also Stransky v. HealthONE of Denver, Inc.*, No. 11-cv-02888-WJM-MJW, 2012 WL 6548108, at *4 (D. Colo. Dec. 14, 2012).  This is a "lenient" standard, *Baldozier v. Am. Family Mut. Ins. Co.*, 375 F. Supp. 2d 1089, 1092 (D. Colo. 2005), "which typically results in conditional certification of a representative class."  *Renfro v. Spartan Computer Servs., Inc.*, 243 F.R.D. 431, 432 (D. Kan. 2007).  The second stage, which comes at the conclusion of discovery, applies a stricter standard of "similarly situated," including application of at least four factors, to

---

[2] *Thiessen* involved a collective action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*.  Because the ADEA adopts the collective action mechanism set forth in FLSA § 216(b), courts apply *Thiessen* to FLSA collective actions.  *See Kaiser v. At The Beach, Inc.*, 2010 WL 5114729, at *4 n.9 (N.D. Okla. Dec. 9, 2010); *see also Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676, 679 (D. Kan. 2004).

determine whether the case can proceed as a collective action.  *Thiessen*, 267 F.3d at 1102–03.

Plaintiff seeks to represent a collective consisting of

All current and former Supervisors (regardless of actual title) who are or who were classified as exempt and who are or who were employed by Kroger during the three years preceding the filing of this case.

Docket No. 19 at 8.[3]  Plaintiff states that these supervisors performed the same material job duties, routinely worked more than 40 hours per workweek, and were subject to the same policy that deprived them of overtime compensation in violation of the FLSA.  *Id.* at 7.  Plaintiff argues that this deprivation is systematic and that Kroger has a "company-wide policy of requiring purportedly exempt supervisors to work in excess of forty (40) hours per workweek using pay practices divorced from the actual number of hours worked."  *Id.* at 2.

Plaintiff requests that the Court order defendants to produce "the names, mailing addresses, dates of employment, job titles, job locations, phone numbers, and e-mail addresses of all potential members" within 14 days.  *Id.* at 9, 11.  Plaintiff further asks the Court to toll the FLSA's statute of limitations.  *Id.* at 9–10.  Plaintiff explains that the FLSA's limitations period is not necessarily tolled when an action is filed, but rather only tolls upon the filing of each individual's consent form to join the action.  *Id.*  Therefore, "collective action members' claims silently erode between the time Plaintiff moves to

---

[3] In her complaint, plaintiff states that she believes that supervisors report to assistant store managers, who report to store managers.  Docket No. 1 at 1 n.1. Plaintiff states that her "proposed definition of 'Supervisors' expressly excludes assistant store managers and store managers except to the extent Kroger employed such individuals as Supervisors."  *Id.*

send notice to the collective and the filing of the respective consent forms." *Id.* at 10.

At this stage, the Court must determine whether plaintiff and the putative collective members were employed in similar positions and whether the plaintiff and putative members were subject to the defendants' unlawful policy, decision, or plan. *Grady v. Alpine Auto Recovery, LLC*, No. 15-cv-00377-PAB-MEH, 2015 WL 3902774, at *2–3 (D. Colo. June 24, 2015).  This is a lenient standard and a minimal burden.  *See Baldozier*, 375 F. Supp. 2d at 1092.

Defendants raise a number of arguments against conditional certification.  First, defendants argue that plaintiff is not similarly situated to the "broad nationwide class [that plaintiff] purports to represent" and that plaintiff has not shown that she is similarly situated to employees who worked for other entities, i.e., for other Kroger subsidiaries, in other King Soopers stores, or in other departments.  Docket No. 24 at 4–8.  As defendants note, the first step of the two-step certification process requires the Court to determine whether the plaintiff has asserted "allegations that the putative class members were together the victims of a single decision, policy, or plan."  *Id.* at  4 (quoting *Thiessen*, 267 F.3d at 1102).  It is not until the second stage that the Court applies a stricter standard of "similarly situated."  *See Thiessen*, 267 F.3d at 1102–03.

Plaintiff alleges that "certain supervisors at certain locations" are compensated hourly, while others are salaried and that all supervisors have the same general responsibilities.  *See* Docket No. 1 at 7, ¶¶ 30–31.  She also alleges that supervisors lack managerial authority and often work more than 40 hours in a workweek.  *Id.* at 8, ¶¶ 33, 36.  Plaintiff states that she has had "extensive conversations" with other

6

supervisors and understands that other supervisors were treated similarly.  Docket No. 19-1 at 2–3, ¶ 10.  She also states that, even though individual supervisors worked at different subsidiaries, Kroger "ultimately employs all [s]upervisors and establishes their pay practices."  Docket No. 1 at 6, ¶ 25.

Defendants argue that, because plaintiff worked for only one subsidiary, namely, King Soopers, she has "not set forth any allegation as to how she and employees who worked for completely different entities are subject to a common 'decision, policy, or plan.'"  Docket No. 24 at 5.  Defendants make similar arguments that plaintiff lacks personal knowledge of Kroger's nationwide pay policies because she only worked in two stores and only in the grocery pick-up department.  *Id.* at 6–8.  Defendants seem to argue that a plaintiff seeking to conditionally certify a large collective must have personal experience in every department at every location with every subsidiary.  The Court disagrees.  Such a heavy burden at the conditional certification stage is contrary to the "lenient" standard that courts in this district apply at this stage.  *See Baldozier*, 375 F. Supp. 2d at 1092; *Lindsay v. Cutters Wireline Serv., Inc.*, No. 17-cv-01445-PAB-KLM, 2018 WL 4075877, at *1 (D. Colo. Aug. 27, 2018) (explaining that, if a plaintiff's allegations are rebuttable on the merits, that is typically an issue for the second stage of the certification process, and certifying collective "[i]n light of the absence of any indication that defendants' pay schemes varied" across subsidiaries).  However, the Court notes that "mere conclusory declarations or those based on hearsay or speculation are insufficient to grant conditional FLSA collective action certification."  *Beall v. SST Energy Corp.*, No. 15-cv-01741-MSK-NYW, 2016 WL

286295, at *1 (D. Colo. Jan. 25, 2016).

Defendants rely on *Nelson v. FedEx Ground Package Sys., Inc.*, No. 18-cv-
01378-RM-NYW, 2018 WL 6715897 (D. Colo. Dec. 21, 2018).  The plaintiff in *Nelson*
worked for one of many independent service providers that contracted with FedEx.  The
court found that the plaintiff's allegations were insufficient at the conditional certification
stage because the plaintiff had provided no allegations that the defendant had
"expressly promulgated and bound" its independent service providers "to a single
action, policy, or plan to affect a universal pay structure."  *Id.* at *5.  *Nelson* is
distinguishable because, unlike the plaintiff in that case, plaintiff here alleges that, even
though Kroger operates through regional subsidiaries, Kroger "ultimately employs all
[s]upervisors and establishes their pay practices."  Docket No. 1 at 6, ¶ 25.  Plaintiff
also claims that all exempt supervisors are subject to the same company-wide policies
and procedures.  *Id.* at 4, ¶ 15.

Second, defendants argue that plaintiff's proposed collective is "overwhelmingly
broad," and the "fact that some supervisors are classified as exempt is insufficient to
warrant conditional certification."  Docket No. 24 at 8–9.  Defendants argue that,
because plaintiff seeks to certify a collective of employees "regardless of actual title,"
plaintiff's proposed collective "seemingly includes Kroger's Chief Executive Officer, and
in practice would require King Soopers, Kroger, and every other Kroger-affiliate to either
personally interview every employee to determine if he or she has any supervisory
authority."  *Id*.

Conditional certification of a collective is not necessarily impermissible just

because the collective is numerous or its members might be difficult to identify.  The Court also disagrees with defendants that conditional certification is inappropriate because some supervisors, like plaintiff, are classified as exempt while others are classified as non-exempt.  Although plaintiff's allegations indicate that not all supervisors are subject to a common pay scheme, plaintiff does not seek to represent a collective of all supervisors; plaintiff seeks to represent a collective only of exempt supervisors.  Thus, the fact that some supervisors are non-exempt is irrelevant to plaintiff's proposed collective.

The Court also does not agree with defendants that plaintiff must identify the supervisors' job titles.  Defendants provide no authority that a plaintiff at this stage must identify the job titles of each member of a proposed collective, and the Court finds that such information is not necessary at the conditional certification stage.  *See, e.g.*, *Rapp v. HV Occupational Health Advisors of Am., LLC*, No. 20-cv-02043-PAB-KMT, 2021 WL 4426956, at *6 (D. Colo. Sept. 27, 2021) (conditionally certifying a collective of "all current and former Site Paramedics (regardless of actual title)"); *Prim v. Ensign United States Drilling, Inc.*, No. 15-cv-02156-PAB-KMT, 2019 WL 4751788, at *8 (D. Colo. Sept. 30, 2019) (conditionally certifying a collective of "hourly oilfield employees"); *Inniss v. Rocky Mountain Inventory, Inc.*, No. 18-cv-1475-WJM-KMT, 2019 WL 10252538, at *6 (D. Colo. Mar. 21, 2019) (conditionally certifying a collective of "Inventory Auditors and store runners (regardless of actual title)").

Plaintiff has provided sufficient allegations that she and some other exempt grocery store supervisors were subject to a single decision, policy, or plan.  However, given the vagueness of the term "supervisor" and plaintiff's relatively limited experience

9

as a pick-up supervisor in only two King Soopers locations near to each other, plaintiff has not shown that she has an understanding of how supervisors are compensated and what their job duties are at every Kroger location nationwide.  *See Thiessen*, 267 F.3d at 1102–03 (requiring "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan" at the "notice stage").  And, unlike in *Lindsey* where the defendants did not indicate that subsidiaries' policies varied, *see* 2018 WL 4075877, at *2, defendants here state that Kroger companies' policies differ.  Docket No. 14 at 5.  King Soopers, for instance, is managed independently and operates pursuant to its own policies.  *Id.*

As defendants note, plaintiff has not alleged that she has spoken to supervisors at any location beyond where she worked about the Kroger pay policies that they have been subject to.  *See* Docket No. 24 at 8.  Plaintiff claims in her declaration that she has had "extensive conversations with other [s]upervisors" about compensation," *see* Docket No. 19-1 at 2–3, but plaintiff provides no supporting facts for this statement, and "conclusory declarations . . . are insufficient to grant conditional FLSA collective action certification."  *See Beall*, 2016 WL 286295, at *1.  Plaintiff has not shown, therefore, how she could represent a nationwide class of "supervisors," given her limited experience.  *See, e.g.*, *Peer v. Grayco Mgmt. LLC*, 2017 WL 2403269, at *4 (M.D. Tenn. June 2, 2017) (denying conditional certification where the plaintiff relied on his complaint and sole declaration and sought conditional certification of a city-wide class, despite only working at one specific location).

The Court also agrees with defendants that a collective of "[a]ll current and

10

former [s]upervisors (regardless of actual title) who are or who were classified as exempt and who are or who were employed by Kroger during the three years preceding the filing of this lawsuit," *see* Docket No. 19 at 8, is a far broader collective than plaintiff appears to intend.  Such a collective could encompass supervisors beyond grocery store locations, including supervisors in accounting, human resources, supply chain, management, headquarters, and many other departments.  Plaintiff has provided no allegations that all of these supervisors were "together the victims of a single decision, policy, or plan."  *Thiessen*, 267 F.3d at 1102.  Plaintiff has provided no non-conclusory allegations that she is similarly situated to supervisors who worked outside of King Soopers stores in Colorado, such that these non-grocery store supervisors were subject to the same pay scheme as plaintiff.  Moreover, she does not mention City Market at all except to say that Kroger owns City Market.  *See* Docket No. 1 at 3, ¶ 10; *see also Stransky*, 2012 WL 6548108, at *4.  The Court thus concludes that any conditional certification and notice must be limited to exempt supervisors at King Soopers grocery store locations in Colorado because plaintiff's knowledge, experience, and allegations are limited to such supervisors.  *See, e.g.*, *Stallings v. Antero Res. Corp.*, No. 17-cv-01939-RM-NYW, 2018 WL 1250610, at *6 (D. Colo. Mar. 12, 2018) (finding that the complaint's "general statements related [the proposed collective] [were] too vague and conclusory to support potential opt-in plaintiffs beyond [plaintiff's] specific locations of employment"), *report and recommendation adopted*, 2018 WL 2561046 (D. Colo. Apr. 16, 2018).

Third, defendants argue that conditionally certifying the proposed collective

would "inappropriately allow many employees to be members of two collective actions at the same time."  Docket No. 24 at 10–11.  Defendants claim that several members of the proposed collective have already filed a collective action.  *Id.* at 10.  Defendants cite to *Powell v. Kroger Co.*, No. 20-cv-01983-RM-NRN, 2021 WL 236315, at *1 (D. Colo. Jan. 25, 2021), which was recently transferred to the United States District Court for the Southern District of Ohio, in which the court conditionally certified a collective of "current and former 'Assistant Store managers' who worked for King Soopers/ City Market." Docket No. 24 at 10 (citing *Powell*, 2021 WL 236315, at *3).  Defendants invoke the "first-to-file rule."  *Id.*  The first-to-file rule applies "when two district courts have jurisdiction over the same controversy, affording deference to the first filed lawsuit." *Lipari v. U.S. Bancorp NA*, 345 F. App'x 315, 317 (10th Cir. 2009) (unpublished); *see also Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir. 1982) (recognizing general rule that "when two courts have concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case"); *Wakaya Perfection LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118, 1124–27 (10th Cir. 2018) (noting that the first-to-file analysis requires a court to consider the chronology of events, the similarity of the parties and issues or claims, and any equitable considerations).  The rule is a discretionary doctrine, resting on "principles of comity and sound judicial administration" and is concerned with avoiding duplicative litigation, rulings which impinge on the authority of sister courts, and piecemeal litigation.  *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999).  As a result, "when related cases are pending before two federal courts, the court in which the case was

last filed may refuse to hear it if the issues raised by the cases substantially overlap."

*Id.*; *accord Cherokee Nation v. Nash*, 724 F. Supp. 2d 1159, 1165 (N.D. Okla. 2010).

Courts generally hold that the first-to-file rule requires analysis of three factors: "(1) the

chronology of events; (2) the similarity of the parties involved; and (3) the similarity of

the issues or claims at stake." *Wakaya Perfection*, 910 F.3d at 1124 (citing *Baatz v.*

*Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016)).

The Court finds that the first-to-file rule does not apply here. Although there is

no dispute that *Powell* was filed before this case, defendants have provided no

indication that assistant store managers are the same as supervisors. Although the

parties "need not be necessarily identical," courts have found that "similarity or

substantial overlap is required." *Dumanian v. Schwartz*, No. 20-cv-01800-PAB-MEH,

2021 WL 1210033, at *2 (D. Colo. Mar. 31, 2021) (quoting *ACU Dev., LLC v. Modern*

*Point, LLC*, No. 19-cv-01063-MEH, 2019 WL 4751710, at *2 (D. Colo. Sept. 30, 2019)

(quotations and citation omitted)). Plaintiff's allegations state that "[s]upervisors'

essential job duties tend to be substantively identical to those of the associates with

whom they work." Docket No. 1 at 8, ¶ 34. Defendants have provided no indication

that the supervisors in plaintiff's proposed collective are or were assistant store

managers, and plaintiff's allegations would seem to undercut such a contention;

however, some assistant store managers and store managers may be employed as

supervisors. *See* Docket No. 1 at 1 n.1

The next issue for the Court to consider is equitable tolling. Equitable tolling is to

be invoked sparingly, "only when a litigant's failure to meet a legally mandated deadline

unavoidably [arises] from circumstances beyond that litigant's control." *Stransky v. HealthONE of Denver, Inc.*, 868 F. Supp. 2d 1178, 1181 (D. Colo. 2012). Equitable tolling may toll the expiration of the statute of limitations. The Tenth Circuit has explained that,

> [i]n civil actions, th[e] court has applied equitable tolling when the defendant's conduct rises to the level of active deception; where a plaintiff has been lulled into inaction by a defendant, and "[l]ikewise, if a plaintiff is actively misled or has in some extraordinary way been prevented from asserting his or her rights."

*United States v. Clymore*, 245 F.3d 1195, 1199 (10th Cir. 2001) (quoting *Biester v. Midwest Health Servs., Inc*, 77 F.3d 1264, 1267 (10th Cir. 1996)); *see also Geiger v. Z-Ultimate Self Def. Studios LLC*, No. 14-cv-00240-REB-NYW, 2015 WL 1139843, at *1 (D. Colo. Mar. 11, 2015).

Plaintiff argues that equitable tolling is appropriate in this case because joinder in collective FLSA actions is "presumptive" and "lenient" and because "[t]he collective members should not be punished for the inherent inefficiencies of motions practice." Docket No. 19 at 10. Defendants argue that plaintiff's equitable tolling request should be denied because the request is contrary to the terms of the FLSA, which "expressly does <u>not</u> toll the statute of limitations," and because tolling must be done case-by-case, while here "there is no litigant who has failed to meet a legally mandated deadline." Docket No. 24 at 13–14.

In general, "potential opt-in plaintiffs are presumed to be aware of the facts and circumstances of their employment, and their claims accrue when they gain knowledge of these facts." *Valverde v. Xclusive Staffing, Inc.*, No. 16-cv-00671-RM-MJW, 2017

WL 6945044, at *4 (D. Colo. Oct. 31, 2017).  In making an equitable tolling

determination, courts employ a flexible standard and consider five factors, including the

lack of notice of the filing requirement, lack of constructive knowledge of the filing

requirement, diligence in pursuing one's rights, absence of prejudice to the defendant,

and the plaintiff's reasonableness in remaining ignorant of the particular legal

requirement.  *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d

552, 561 (10th Cir. 2000).

       In this case, potential plaintiffs would have had actual notice of their claims

against defendants at the end of each pay period when defendants did not compensate

them for the excess hours worked, and plaintiff provides no evidence that potential

plaintiffs were prevented from diligently pursuing their rights.  While defendants are in

sole possession of the contact information for the putative collective members, *see*

Docket No. 27 at 10, as defendant was in *Stransky*, 868 F.3d at 1181–82, the Court

does not find it "particularly unjust" to deny plaintiff's request for equitable tolling.

Contrary to plaintiff's argument, claims by potential collective members have not been

allowed to diminish or expire due to circumstances beyond their direct control, as each

supervisor could have acted individually to assert his or her rights under the FLSA, and

many supervisors likely would have been aware that their co-workers were paid

similarly.  Moreover, the Court does not find the conditions in this case analogous to

those where the Tenth Circuit has recognized the need for equitable tolling.  For

instance, unlike in *Gray v. Phillips Petrol. Co.*, 858 F.2d 610, 616 (10th Cir. 1988),

where the court found tolling appropriate because plaintiffs were "lulled into inaction,"

plaintiff has not alleged that any potential collective member has been lulled into

inaction.  While defendants do not claim that they would be prejudiced by tolling, let alone prejudiced unduly, as they have been aware of the conditional collective nature of this matter from the beginning, it is plaintiff's burden to establish that equitable tolling is appropriate.  *See, e.g.*, *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) (finding equitable tolling appropriate when the plaintiff demonstrates "extraordinary circumstances" that made it "impossible" for the plaintiff to file a timely lawsuit and holding that tolling is available only "when [a plaintiff] diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control").

Moreover, there is no indication from plaintiff's motion that the putative collective action members are somehow ignorant of their rights.  *See Judd v. KeyPoint Gov't Sols., Inc.*, No. 18-cv-00327-RM-STV, 2018 WL 4383037, at *9 (D. Colo. July 30, 2018), *report and recommendation adopted*, 2018 WL 7142193 (D. Colo. Dec. 4, 2018).  Considering these factors, the Court finds that equitable tolling is not appropriate.  Equitable tolling, as noted above, is to be invoked sparingly, *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990), and plaintiff has failed to demonstrate that her or any other supervisor's failure to timely assert their FLSA claims was due to a circumstance beyond their control.  *See Stransky*, 868 F. Supp. 2d at 1181.

The Court will therefore conditionally certify a collective action consisting of:

[a]ll current and former Supervisors (regardless of actual title) who are or who were classified as exempt and who are or who were employed by Kroger and who worked at a King Soopers store location in Colorado at any time between February 22, 2018 and the present.

16

**B.  Notice to Conditional Collective**

Once a court concludes that conditional certification of an FLSA collective action

is appropriate, the court may authorize plaintiff to disseminate a proper notice and

opt-in consent form to putative collective action members.  *Hoffmann-LaRoche, Inc. v.

Sperling*, 493 U.S. 165, 169–70 (1989); *see also* 29 U.S.C. § 216(b) ("No employee

shall be a party plaintiff to any such action unless he gives his consent in writing to

become such a party and such consent is filed in the court in which such action is

brought.").  The Court has broad discretion regarding the details of the notice sent to

potential opt-in plaintiffs.  *Hoffmann-LaRoche*, 493 U.S. at 171.  "The overarching

policies of the FLSA's collective suit provisions require that the proposed notice provide

accurate and timely notice concerning the pendency of the collective action, so that

[potential plaintiffs] can make informed decisions about whether to participate."

*Whitehorn*, 767 F. Supp. 2d at 450 (internal citations and quotations omitted).

The Court finds that the Notice informs putative collective members of the parties

involved, the parties' general allegations, information about the collective action

designation, how to opt in, and the potential obligations or consequences for putative

collective members who choose to opt in or not.  Docket No. 19-2.  In addition, the

Notice provides that opt-in plaintiffs must return consent forms to plaintiff's counsel by a

certain date.  The Notice, however, defines the collective differently than plaintiff does

in her motion.  The Notice defines the collective as

> [a]ll current and former SUPERVISORS (regardless of specific title) who
> have been classified as exempt and who have been employed by The
> Kroger Company and/or Dillon Companies, LLC d/b/a King Soopers/City
> Market at any time between February 22, 2018 and the present.

17

Docket No. 19-2 at 1.  Plaintiff shall modify the collective in the Notice to comply with this order.

Defendants raise a number of arguments against plaintiff's proposed notice, which plaintiff provided as Docket No. 19-2.  Docket No. 24 at 11–13.  Defendants argue that they should not be required to post notices in their stores, that plaintiff's proposed collective definition is vague, that the Court should not permit plaintiff to send reminder notices, that, if the Court conditionally certifies the collective, defendants should have at least 30 days, not 14 days, to provide plaintiff the contact information about the potential collective, that defendants should not have to provide phone numbers for collective members, and that plaintiff's proposed 90-day opt-in period is too long.  *Id.*

Plaintiff asks the Court to order Kroger to "conspicuously post the notice at each of [Kroger's] worksites in an area readily and routinely available for review by 'exempt' [s]upervisors."  Docket No. 19 at 9.  Defendants argue that posting the notice at each location is not appropriate because plaintiff has failed to establish that doing so would reach a wider audience than sending the notice via mail and email.  Docket No. 24 at 11.  The Court agrees with defendants.  Plaintiff has not shown that posting "will reach a wider audience than mailing."  *Bagoue v. Dev. Pathways, Inc.*, No. 16-cv-01804-PAB-NRN, 2019 WL 1358842, at *4 (D. Colo. Mar. 25, 2019) (quoting *Nelson v. Firebirds of Overland Park, LLC*, 2018 WL 3023195, at *7 (D. Kan. June 18, 2018)).

As to defendants' second argument, the Court agrees with defendants that plaintiff's proposed collective definition is not sufficiently specific to include only the supervisors about whom plaintiff has made allegations in her complaint.  As the Court

18

discussed previously, the collective will be limited to exempt supervisors at King Soopers locations in Colorado.

Plaintiff asks the Court to send reminder notices to potential collective members at their last known mailing and email addresses.  Docket No. 19 at 9.  However, as defendants note, plaintiff does not explain why a reminder is necessary.  Plaintiff does not argue, for instance, that a reminder would help reach collective members who might be unreachable otherwise or that there are other barriers to communication.  Plaintiff has not demonstrated that a reminder notice is necessary in this case.  Additionally, the Court finds that a reminder notice may "improperly suggest the Court's endorsement of [p]laintiff's claims."  *Bagoue*, 2019 WL 3023195, at *4 (quoting *Fenley v. Wood Group Mustang, Inc.*, 170 F. Supp. 3d 1063, 1074-75 (S.D. Ohio 2016); *see also Whittington v. Taco Bell of America, Inc.*, No. 10-cv-01884-KMT-MEH, 2012 WL 1622457, at *2 (D. Colo. May 9, 2012) (noting that "even the mere appearance of judicial endorsements of the merits of this action is improper" (internal quotations and alterations omitted)); *cf. Robertson v. REP Processing, LLC*, No. 19-cv-02910-PAB-NYW, 2021 WL 4255027, at *4 (D. Colo. Sept. 16, 2021) (finding a reminder warranted because plaintiff argued that the pandemic has created barriers to communication with collective members).

Defendants ask for 30 days to provide plaintiff the contact information for the potential collective members.  Docket No. 24 at 12.  Plaintiff does not object to extending defendants' time period to provide this information provided that "tolling is ordered to mitigate any prejudice from this delay."  Docket No. 27 at 8.  The Court agrees that 30 days is more appropriate time for defendants to compile and transmit

this information to plaintiff.  The Court, however, previously found that tolling is not warranted in this case.  Therefore, the Court will provide defendants 30 days to provide to plaintiff the potential collective members' contact information.

Defendants next argue that they should not have to provide telephone numbers for collective members to plaintiff because plaintiff does not seek to send the notice by text message and members who opt-in to the collective can provide plaintiff's counsel with their phone numbers.  Docket No. 24 at 12.  As plaintiff notes, the Court has previously found that telephone numbers are relevant because they can be used to track down the address of a putative collective member whose mailed notice is returned as undeliverable.  Docket No. 27 at 8 (citing *German v. Holtzman Enterprises, Inc.*, No. 19-cv-03540-PAB-STV, 2021 WL 1087718, at *5 (D. Colo. Mar. 22, 2021)).  The Court will therefore require that defendants provide potential collective members' telephone numbers to plaintiff.

Finally, defendants seek to change the opt-in period from 90 days to 60 days. Docket No. 24 at 12–13.  Defendants claim that courts in this district favor a 60-day opt-in period.  *Id.* at 13 (citing *Ward v. Express Messenger Sys., Inc.*, No. 17-cv-02005-NYW, 2018 WL 1604622, at *7 (D. Colo. Apr. 3, 2018)).  Although 90-day opt-in periods are not unusual, *see, e.g.*, *Ostrander v. Customer Eng'g Servs., LLC*, No. 15-cv-01476-PAB-MEH, 2016 WL 11730014, at *7 (D. Colo. Sept. 14, 2016); *Darrow v. WKRP Mgmt., LLC*, No. 09-cv-01613-CMA-BNB, 2012 WL 638119, at *7 (D. Colo. Feb. 28, 2012), plaintiffs provide no reason that a 90-day opt-in period is necessary for a collective restricted to Colorado supervisors.  Therefore, potential collective members

shall have 60 days to opt-in.  *See, e.g.*, *Ward*, 2018 WL 1604622, at *7; *Bracamontes v. Bimbo Bakeries U.S.A. Inc.*, No. 15-cv-02324-RBJ, 2017 WL 4621276, at *2 (D. Colo. Aug. 3, 2017); *Cooper v. Noble Casing, Inc.*, No. 15-cv-01907-WJM-CBS, 2016 WL 8314686, at *1 (D. Colo. May 2, 2016); *May v. E & J Well Serv., Inc.*, No. 14-cv-00121-RBJ, 2014 WL 2922655, at *3 (D. Colo. June 27, 2014).

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that:

1.  This action shall be conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b).  The collective action members are defined as follows:

> All current and former Supervisors (regardless of actual title) who are or who were classified as exempt and who are or who were employed by Kroger and who work or who worked at a King Soopers location in Colorado at any time between February 22, 2018 and the present.

2.  Plaintiff is authorized to act as the representative for the collective action members, and plaintiff's counsel is authorized to act as counsel for the collective.

3.  The proposed Notice [Docket No. 19-2] is approved subject to plaintiff making the revisions discussed herein and incorporating the modifications reflected in the version of the notice attached to this order.

4.  Within 30 days of the date of this order, defendants shall provide to plaintiff's counsel the names, mailing addresses, dates of employment, job title, job location, telephone numbers, and email addresses of all putative members of the FLSA collective in an electronically readable format.

5.  Within 15 days after receiving this list from defendants, plaintiff shall send the

Notice by First Class U.S. Mail and email to the last known address of each of the individuals identified on the above-referenced list.

6.  Within 60 days from the postmark date of the Notice, any individual to whom notice is sent shall "opt in" by returning the necessary documents to plaintiff's counsel.

It is further

**ORDERED** that Motion to Strike or, in the Alternative, for Leave to File a Surreply [Docket No. 29] is **DENIED as moot**.[4]


DATE January 28, 2022.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

[4] Defendants filed a motion to strike portions of plaintiff's reply or, in the alternative, to file their own surreply.  Docket No. 29.  As an initial matter, defendants' motion to strike was due, if at all, within 21 days of the filing of plaintiff's reply, which was filed August 20, 2021, *see* Docket No. 27, making defendants' motion due September 10, 2021.  Fed. R. Civ. P. 12(f)(2).  Defendants, however, filed their motion on October 1, 2021.  *See* Docket No. 29.  Defendants provide no explanation for this untimely motion.  Nevertheless, because the Court ruled on plaintiff's motion without considering the portions of plaintiff's reply that defendants find objectionable, the Court will deny defendants' motion as moot.